UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGHLAND PARK FORD LINCOLN, INC., individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>vs.<br><br>ERIE INSURANCE EXCHANGE,<br><br>         Defendant. | Case No.: 1:21-cv-38 |

## CLASS ACTION COMPLAINT

Plaintiff, HIGHLAND PARK FORD LINCOLN, INC. ("Plaintiff") files this Class Action Complaint, individually and on behalf of all others similarly situated, against Defendant, ERIE INSURANCE EXCHANGE, alleging as follows:

## NATURE OF THE CASE

1. This is a civil class action for declaratory relief and breach of contract arising from Plaintiff's contracts of insurance with the Defendant.

2. At the direction of Governor JB Pritzker, through Executive Order 2020-10, Plaintiff was forced to cease normal sales operations and close its showroom to the public on March 20, 2020. Guidance from the State on March 23, 2020 permitted limited operations including sales except by appointment only. These governmental actions causing an interruption to and loss of Plaintiff's business income. The business was permitted to reopen at 50% capacity beginning on May 29, 2020, only to be ordered to reduce occupancy as of November 20, 2020 to a maximum of 25%.

3. Plaintiff and the Class purchased and paid for "all-risk" Commercial Property Coverage insurance policies from Defendant, which provide broad property insurance coverage for all non-excluded, lost business income, including the losses asserted here.

4. Plaintiff provided notice of its claim for coverage to Defendant's agent, but was informed that Defendant refused to provide the purchased coverage, and denied Plaintiff's eligibility for benefits under the policy.

5. Defendant has similarly refused to, or will refuse to, honor its obligations under the "all-risk" policy(ies) purchased by Plaintiff and the other members of the putative Class of insureds.

## PARTIES

6. Plaintiff HIGHLAND PARK FORD LINCOLN, INC. is a Delaware corporation and operates an automobile dealership located at 1333 Park Ave W, Highland Park, in Cook County, Illinois (the "Covered Property"). Plaintiff is resident and citizen of Illinois.

7. Defendant ERIE INSURANCE EXCHANGE is a corporation with its principal place of business in Erie, Pennsylvania and is a citizen of Pennsylvania.

## JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

9. The Court has personal jurisdiction over Defendant because Defendant maintains their principal place of business in this District.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## FACTUAL BACKGROUND

### Plaintiff Purchased "All-Risk" Policies of Property Insurance That Broadly Provide Coverage for Loss of Business Income, Among Other Things

11. Plaintiff purchased a contract of insurance (the "Policy") from Defendant, whereby Plaintiff agreed to make payments (in the form of premiums) to Defendant in exchange for Defendant's promise to indemnify Plaintiff for losses at the Covered Property, including, but not limited to, business income losses.

12. Plaintiff paid all premiums owed to Defendant under the Policy, and Defendant accepted all such premiums from Plaintiff.

13. The Policy is a form policy issued by Defendant.

14. The Policy is an "all-risk" policy, which provides the broadest property insurance coverage available.

15. The Policy provides coverage for "direct physical 'loss' of or damage to covered property . . . caused by or resulting from a peril insured against." "Covered Property" is defined in the Policy as Plaintiff's business location located at 1333 Park Ave W, Highland Park, Illinois 60035.

16. The Policy defines loss as the direct and accidental loss of or damage to covered property.

17. The Policy does not define the phrase "direct physical loss of or damage to . . . ."

18. However, coverage for direct physical loss of or damage to the Covered Property means that coverage is triggered if either a physical loss of property or damage to property occurs. The concepts are separate and distinct and cannot be conflated.

19. Physical loss of, or damage to, property may be reasonably interpreted to occur when a peril inured against threatens or renders property unusable or unsuitable for its intended purpose or unsafe for normal human occupancy and/or continued use.

20. The Policy provides Plaintiff with, *inter alia*, various income protection and extra expense coverages during the Policy Term.

21. Under the Policy, Defendant agrees to pay for loss of income "sustained due to a partial or total 'interruption of business' resulting directly from 'loss' or damage to property on the premises," with "the premises" defined as the Covered Property.

22. Additional coverage is provided under the Policy for business income losses resulting from an action of civil authority that prohibits access to the Covered Property, related to a peril insured against at property other than the Covered Property.

23. Members of the Class also purchased a policy of insurance from Defendant providing for the same income protection coverage and using the same or substantially similar form policy provisions.

**In Response to COVID-19, Illinois and Other State Governments Issue Sweeping Orders Shutting Down "Non-Essential" Businesses**

24. Severe acute respiratory syndrome coronavirus 2 ("COVID-19") has spread, and continues to spread, rapidly across the United States and has been declared a pandemic by the World Health Organization.

25. The global COVID-19 pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials for many days.

26. According to a study published in *The New England Journal of Medicine*, COVID-19 is widely accepted as a cause of real physical loss and damage. It remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on

cardboard and up to two to three days on plastic and stainless steel. *See* https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces (last accessed January 6, 2021).

27. Another study, published in the *Journal of Hospital Infection*, found: "Human coronaviruses can remain infectious on inanimate surfaces at room temperature for up to 9 days. At a temperature of 30°C or more the duration of persistence is shorter." *See* https://www.inverse.com/science/coronavirus-4-studies-explain-how-covid-19-sticks-to-surfaces (last accessed January 6, 2021).

28. On March 9, 2020, the Governor of Illinois declared that "a disaster exists within the State of Illinois and specifically declare[d] all counties in the State of Illinois as a disaster area."[1] Thereafter, on March 20, 2020, the Governor of Illinois issued a "stay at home" Order, Executive Order 2020-10, closing all non-essential businesses, including Plaintiff's business. Specifically, the Executive Order, which became effective immediately upon its issuance, mandated that:

> All businesses and operations in the State, except Essential Businesses and Operations as defined below, are required to cease all activities within the State except Minimum Basic Operations, as defined below.[2]

29. Plaintiff's sales operations were not classified as an "Essential Business."

30. On May 29, 2020, the Governor of Illinois issued an Executive Order, Executive Order 2020-38, which permitted a limited re-opening of Plaintiff's sales operations, limiting occupancy at the Covered Premises to 50% of its maximum.[3] On November 18, 2020, this capacity limit was reduced to 25% by Executive Order 2020-73.[4]

---

[1] https://www2.illinois.gov/government/executive-orders.
[2] https://www2.illinois.gov/pages/executive-orders/executiveorder2020-10.aspx
[3] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-38.aspx
[4] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-73.aspx

31. Most other states, including those in which the putative Class members reside and/or do business, have issued similar compulsory shut-down orders for "non-essential" businesses, or businesses deemed not to be "life sustaining."

32. The closure of all "non-life-sustaining businesses" evidences an awareness on the part of both state and local governments that COVID-19 causes loss of or damage to property. This is particularly true in places where business is conducted, as the contact and interaction necessarily incident to such businesses causes a heightened risk of the property becoming contaminated.

33. For example, a New York City Executive Order entered on March 16, 2020 specifically acknowledged that: "[COVID-19] physically is causing property loss and damage." *See* https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf (last accessed January 6, 2021).

34. Similarly, in a March 16, 2020 proclamation, the City of New Orleans acknowledged COVID-19's "propensity to attach to surfaces for prolonged periods of time, thereby spreading from surface to person and causing property loss and damage in certain circumstances." *See* https://nola.gov/mayor/executive-orders/emergency-declarations/03162020-mayoral-proclamation-to-promulgate-emergency-orders-during-the-state-of-emergency-due-to-co/ (last accessed January 6, 2021).

35. The World Health Organization ("WHO") has indicated that airborne transmission, "particularly in specific indoor locations, such as crowded and inadequately ventilated spaces" poses a significant risk.[5]

---

[5] https://apnews.com/648feb226473f9841920abd6ffb004c7

36. The CDC has warned that exposure to an individual with COVID-19 for fifteen minutes or more, or close contact within six feet of distance, is enough to justify a personal quarantine.[6]

37. As a result of the orders governing Plaintiff's business, Plaintiff's business closed on March 23, 2020. The business was re-opened on or about May 29, 2020, but only at 50% capacity, pursuant to ongoing government-ordered restrictions.

38. The business was again ordered to reduce capacity on November 18, 2020. The business was allowed only 25% of its capacity, pursuant to ongoing government-ordered restrictions.

39. Plaintiff has incurred, and will continue to incur, among other things, substantial losses of business income and additional expenses covered under the Policy.

40. Plaintiff provided notice to Defendant's agent of its claim for the interruption to its business and loss of income.

41. Plaintiff was informed that Defendant refused to provide coverage for Plaintiff's claims.

### Plaintiff's Losses Arise From Direct Physical Loss Or Damage

42. Plaintiff's Covered Property suffered "direct physical loss or damage" due to the Governor of Illinois' Order mandating that Plaintiff discontinue its primary use of the Covered Property. The Governor's Orders, in and of themselves, constitute a peril insured against within the meaning of the Policies.

43. Alternatively, and to the extent the Orders do not constitute a peril insured against within the meaning of the Policy, the COVID-19 pandemic and the ubiquitous nature of the

---

[6] https://www.cdc.gov/coronavirus/2019-ncov/php/public-health-recommendations.html

COVID-19 virus caused a direct physical loss of or damage to Plaintiff's Covered Property. Specifically, the Covered Property has been rendered unusable for its intended purposes because the highly contagious nature of the COVID-19, particularly when people gather inside a building or other closed space for extended periods of time, precludes any meaningful use of the Covered Property.

44. Further, and as an additional basis for coverage under the Policy, the governmental shutdown orders or, alternatively, the ubiquitous nature of the COVID-19 virus, as explained above, caused direct physical loss of or damage to property other than Plaintiff's Covered Property, and such loss or damage resulted in an "action by civil authority" prohibiting access to Plaintiff's Covered Property, within the meaning of the Policy.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this action individually and as a class action on behalf of the following class (collectively, the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All policy holders in the United States who purchased commercial property coverage, including income protection (and extra expense) coverage from Defendant and who have been denied coverage under their policy for lost business income after being ordered by a governmental entity, in response to the COVID-19 pandemic, to shut down or otherwise curtail or limit in any way their business operations.

46. Excluded from the Class are Defendant and its officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

47. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

48. The requirements of Rule 23(a)(1) have been met. The members of the Class are so numerous that joinder would be impracticable. Class members are readily identifiable from information and records in Defendant's possession, custody, or control.

49. The requirements of Rule 23(a)(2) have been met. There is a well-defined community of interest in the common questions of law and fact affecting the Class members. These common legal and factual questions include, but are not limited to:

   a. whether Defendant owed coverage to Plaintiff and the Class;

   b. whether any exclusions to coverage apply;

   c. whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages; and

   d. whether Plaintiff and members of the Class are entitled to equitable, declaratory and/or other relief, and if so, the nature of such relief.

50. The requirements of Rule 23(a)(3) have been met. Plaintiff's claims are typical of the claims of the absent class members and have a common origin and basis. Plaintiff and absent Class members are all injured by Defendant's refusal to afford the purchased coverage. Plaintiff's claims arise from the same practices and course of conduct giving rise to the claims of the absent Class members and are based on the same legal theories, namely the refusal to provide insurance coverage for the loss. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief. Plaintiff's claims arise from the same practices and course of conduct that give rise to the other Class members' claims and are based on the same legal theories.

51. The requirements of Rule 23(a)(4) have been met. Plaintiff will fully and adequately assert and protect the interests of the absent Class members and have retained Class

counsel who are experienced and qualified in prosecuting class action cases similar to this one. Neither Plaintiff nor Plaintiff's attorneys have any interests contrary to or conflicting with the interests of absent Class members.

52. Class certification of Plaintiff's claims is also appropriate pursuant to Rule 23(b)(3). The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

53. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues. Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or inefficient to do so. Plaintiff knows of no difficulties in managing this action that would preclude its maintenance as a class action.

54. Additionally, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other Class members and impair their interests. Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making declaratory relief appropriate to the Class as a whole.

## COUNT I

### DECLARATORY RELIEF

55. Plaintiff incorporates by reference each and every allegation set forth above.

56. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

57. An actual controversy has arisen between Plaintiff and Defendant as to the rights, duties, responsibilities and obligations of the parties in that Plaintiff contends and Defendant disputes and denies that the Policy provide coverage to Plaintiff for any current and future lost business income, subject to the limit of liability, for the temporary suspension of Plaintiff's operations.

58. Plaintiff continues to suffer injury and are at risk of future loss as a result of Defendant's failure to abide by its coverage obligation under the Policy. Plaintiff's business remains limited to serving customers at a 25% capacity, pursuant to ongoing government-ordered restrictions, as the threats of COVID-19 continue. Furthermore, the mere occurrence of the COVID-19 virus in the United States in 2020 demonstrates the future risk that Plaintiff could suffer property loss as a result of another widespread virus and related government shutdown orders.

59. The Policy provides coverage for "direct physical loss of or damage to" the Covered Property.

60. Plaintiff's loss of use, loss of access, and loss of functionality of the Covered Property when government orders made it unlawful for Plaintiff to fully access, use, and operate its businesses at the Covered Property, constitute a direct physical loss of the Covered Property under the Policy. Alternatively, the ubiquitous nature of the COVID-19 virus caused direct

11

physical loss or damage to the Covered Property by preventing Plaintiff from using the Covered Property for its intended purpose.

61. Additionally, the government shutdown orders or, alternatively, the ubiquitous nature of the COVID-19 virus, caused direct physical loss or damage to property other than the Covered Property, thereby invoking coverage under the Policy's "Civil Authority" provision for "actual loss of 'income' and/or 'rental income' . . . caused by action of civil authority that prohibits access to the premises described."

62. The Policy constitutes valid and binding agreements obligating the Defendant to indemnify Plaintiff for covered losses.

63. Plaintiff has substantially performed or otherwise satisfied all conditions precedent to bringing this action and obtaining coverage pursuant to the Policy and applicable law, or alternatively, Plaintiff has been excused from performance by Defendant's acts, representations, conduct, or omissions.

64. Defendant has failed to indemnify Plaintiff for its covered losses.

65. No exclusion to coverage applies.

66. Plaintiff has suffered and continue to suffer covered losses under the Policy.

67. Plaintiff, individually and on behalf of the Class, seeks a Declaratory Judgment that there is coverage for their business interruption losses under the Policy.

## COUNT II

### BREACH OF CONTRACT

68. Plaintiff incorporates by reference Paragraphs 1 through 61 as if fully set forth herein.

69. Plaintiff and Defendant entered into a contract of insurance; here, the Policy.

70. The Class members entered into substantially identical policies with Defendant.

71. Under the Policy, Defendant agreed to indemnify Plaintiff and the Class for their business losses as a result of covered losses.

72. Plaintiff and the Class members suffered covered losses under the Policy.

73. Plaintiff and the Class members satisfied all conditions precedent to receiving the coverage they purchased from Defendant.

74. Defendant breached its contracts with Plaintiff and the Class members by failing and refusing to provide the contracted-for coverage.

75. Defendant's breach of the contracts has caused Plaintiff and the Class to suffer damages in the amount of their unreimbursed business losses or their limits of liability, whichever is lower.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff herein prays as follows, on behalf of itself and all other similarly situated:

1) For a declaration that there is coverage under the Policy for the interruption to Plaintiff's business and the associated business income lost therefrom;

2) For damages, costs and attorney's fees; and

3) For such other relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to the Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Date:   January 13, 2021

Respectfully submitted,

/s/ Gary F. Lynch

Gary F. Lynch (Pa. ID 56887)
R. Bruce Carlson (Pa. ID 56657)
Kelly K. Iverson (Pa. ID 307175)
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243
F: 412-231-0246
glynch@carlsonlynch.com
bcarlson@carlsonlynch.com
kiverson@carlsonlynch.com

Bryan L. Bleichner (pro hac vice forthcoming)
Jeffrey D. Bores (pro hac vice forthcoming)
Christopher P. Renz (pro hac vice forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300
Fax: (612) 336-2940
bbleichner@chestnutcambronne.com
jbores@chestnutcambronne.com
crenz@chestnutcambronne.com

Matthew Metzger (pro hac vice forthcoming)
**WOLTERMAN LAW OFFICE**
434 West Loveland Avenue
Loveland, OH 45140
Telephone: (513) 488-1134
Fax: (513) 322-4557
matt@woltermanlaw.com

*Counsel for Plaintiffs and the Class*